IjOVE, J.,
concurs in part and dissents in part.
li'I respectfully concur in part and dissent in part. Procedurally, I disagree with the majority’s decision, based on Bd. of Supervisors of La. State Univ. & Mech. College v. Mid-City Holdings, LLC, 14-0506 (La.App, 4 Cir. 10/15/14), 151 So.3d 908, to convert the present appeal to -a supervisory writ application. Bd. of Supervisors is procedurally distinguishable in that the defendant filed an answer and reconventional demand. The plaintiff responded by filing a peremptory exception of prescription, which the trial court sustained dismissing the defendant’s recon-ventional demand. This Court found the judgment sustaining the exception lacked decretal language to dispose of the defendant’s reconventional demand with prejudice. Therefore,, it-was not a final judgment. . :
Unlike Bd. of Supervisors, the case at bar presents no reconventional demand or other ancillary claim'. Moreover, all issues were disposed of by summary judgment and not exception, “By its nature the granting of summary judgment indicates that there is nothing left.to determine and the law requires judgment be entered for one party.” Vega v. Wal-mart Stores, Inc., 03-2239, p. 3 (La.App. 1 Cir. 9/17/04), 888 So.2d 242, 243.
In MR Pittman Grp., LLC v. Plaquemines Parish Gov’t., 15-0395, p. 2 (La. App. 4 Cir.9/16/15), 176 So.3d 549, 551, this Court stated:
|2an “[ajppeal is the exercise of the right of a party to have a judgment of a trial court revised, modified,* set aside, or reversed bys an appellate court.” La. C.C.P.1 art.2082 (emphasis added). A final judgment is appealable.’ See La. C.C.P. art.2083 A. “A judgment that determines the merits in whole or in part is a final judgment.” 'La. C.C.P. art. 1841. But “Mo appeal may be taken from a partial final judgment under Article 1915(B) until the judgment has been designated a final judgment under Article 1915(B).” La. C.C.P. art. 1911 B (emphasis added). This may be contrasted with ¡-a partial final judgment under Article 1915 A which does not require designation. See.id.
Thus, a judgment which determines the merits “in whole,” that is one which , grants the successful, .party or parties all of the relief prayed for or adjudicates all of the issues in the case, does not require designation by the trial judge as appealable.
(emphasis added). The trial court judgment in MR Pittman only dismissed the parish government’s contract-based claims. Id,, 15-0395, p. 1, 176 So.3d at 550. How *167 ever, the parish government’s negligence claims were never adjudicated. Thus, because the trial court rendered a partial judgment that did not designate it as “a final judgment by the court-after an express determination that there is no just reason for delay,” this Court dismissed the appeal. Id., 15-0395, p. 3, 176 So.3d at 551.
Unlike MR Pittman, the trial court’s granting of summary judgment in favor of Daisy Dukes as to Mrs. Tomlinson’s claims for spoliation , of evidence and impairment of a civil action and as to liability determined the merits in whole. The effect of the judgment granted Daisy Dukes, as the successful party, all of the relief prayed for. Therefore, the judgment does not require designation by the trial judge as appealable. See also Vega v. Wal-Mart Stores, Inc., 03-2239, p. 3 (La.App. 1 Cir. 9/17/04), 888 So.2d 242, 243 (Court amended, and simultaneously affirmed, the judgment to reflect a dismissal with prejudice where the trial court granted summary judgment without prejudice). Therefore, I disagree with the majority’s decision to convert the present appeal to a supervisory writ application. I find our appellate jurisdiction was properly invoked and find we should treat the matter before us as an appeal.
I aWith respect to the majority’s holding on the substantive issues, I agree that Mrs. Tomlinson has, submitted sufficient evidence to overcome Daisy Dukes’ summary judgment on the issue of liability. However, I disagree with the majority’s decision to affirm summary judgment in Daisy Dukes’ favor on Mrs. Tomlinson’s spoliation claim.
First, this Court’s de novo review of a granting of summary judgment applies the same standards that direct a trial court’s consideration of whether summary judgment is appropriate. Francis v. Union Corp., 12-1397, p. 2-3 (La.App. 4 Cir. 5/8/13), 116 So.3d 858, 860 (writ denied 13-1321 (La.9/20/13), 123 So.3d 177). Therefore,. “determining whether an issue is genuine, courts cannot consider the merits, make credibility determinations, evaluate testimony or weigh evidence.” Quinn v. RISO Investments, Inc., 03-0903, p. 3-4 (La.App. 4 Cir. 3/3/04), 869 So.2d 922, 926 (citing Coto v. J. Ray McDermott, S.A., 99-1866, p. 4 (La.App, 4 Cir. 10/25/00), 772 So.2d 828, 830).
In that Mrs. Tomlinson carries the burden of proof at trial, we recognize:
... [the plaintiffs] burden is to prove her case by, a preponderance of the evidence. This burden may be met by direct or circumstantial evidence. If, as in this case, circumstantial evidence is relied upon, that evidence, taken as a whole, must exclude every-other reasonable hypothesis with a fair amount of certainty. This does not mean, however, that it must negate all other possible causes.
Lacey v. Louisiana Coca-Cola Bottling Co., 452 So.2d 162, 164 (La.1984). (emphasis in original). Likewise, a plaintiff may use circumstantial evidence to defeat a motion for summary judgment. Wood v. Becnel, 02-1730, p. 5 (La.App. 4 Cir. 2/26/03), 840 So.2d 1225, 1227; Florane v. Pendle-ton Memorial Methodist Hosp., 02-0165 (La.App. 4 Cir. 5/29/02), 822 So.2d 642; Independent Fire Ins. Co. v. Sunbeam Corp., 99-2181 (La.2/29/00), 755 So.2d 226.
This Court is called upon to evaluate the evidence only to determine whether genuine issues of material fact remain as to whether Daisy Dukes intentionally | ¿destroyed' evidence for the purpose of depriving Mrs. Tomlinson of its use. Therefore, I find the majority’s weighing of evidence and its evaluation of the testimony for veracity is outside the confines of our authority on summary judgment.
*168 I begin by addressing the majority’s interpretation of Reynolds v. Bordelon, 14-2362 (La.6/30/15), 172 So.3d 589, as it applies to this case. In Reynolds, the Louisiana Supreme Court defined the scope of spoliation claims, holding that Louisiana only recognizes a cause of action for the intentional spoliation of evidence. The plaintiff in Reynolds sought a cause of action for the negligent spoliation of evidence against third-party spoliators. The Reynolds court discussed at length the policy considerations for not recognizing negligent spoliation claims, much of which focused on the effect recognition would have particularly on third party-spoliators, who have no direct connection to the underlying suit.
From a practicality standpoint, the Louisiana Supreme Court reasoned, “the act of negligently spoliating evidence is so unintentional an act that any recognition of the tort ... would act to penalize a party who was not aware of its potential wrongdoing in the first place.” Id., 14-2362, p. 9 172 So.3d at 597 (emphasis added). The majority’s citation of this portion of the Reynolds opinion, in my view, exemplifies an important distinction between Reynolds and this case. In Reynolds, the plaintiff filed a cause of action against third-party spoliators, which is uniquely different from a cause of action against first-party spolia-tors like Daisy Dukes. The Louisiana Supreme Court reasoned that the third-party spoliators in that case were so attenuated from the underlying cause of action and not aware of any wrongdoing that a cause of action for negligent spoliation should not lie. However, if the third-party spolia-tors were made aware of the potential for litigation and instructed not to destroy the evidence other remedies under the law may exist.
IsAs the Reynolds court suggests and this Court has previously recognized knowledge becomes a material issue and another question of fact in the determination of intent. Daisy Dukes’ knowledge of potential wrongdoing becomes essential to the issue of intent where Daisy Dukes claims that Mrs. Tomlinson is unable to meet her burden based on Daisy Dukes’ uncorroborated testimony that merely supports the truth of its assertion.
The majority acknowledges the holding in Reynolds and recites a line of cases that demonstrate that “this Court has long recognized intentional spoliation of evidence.” Nevertheless, the majority then departs from the guidance these cases offer and concludes “an essential element of a spoliation claim is the intent of the party alleged to be a spoliator, which after Reynolds must be greater than the general negligence standard.”
The majority states that “the record establishes that ... the surveillance video was erased pursuant to routine business procedures.” However, all facts regarding Daisy Dukes’ alleged policy for regularly destroying the surveillance footage derives from the testimony of Mr. Richardson. The majority acknowledges this fact, noting that Daisy Dukes has not offered any written proof or testimony of its policy from the previous owner or other managers employed at that time of the incident.
Despite identifying “intent” as “an essential element” of Mrs. Tomlinson’s spoliation claim, the majority’s reliance upon Mr. Richardson’s testimony alone is problematic. The majority overlooks recognized jurisprudence that courts are cautious of accepting unsubstantiated claims by defendants without the trier of fact having an opportunity to observe and listen to the testimony and to make necessary credibility determinations. See Indep. Fire Ins. Co. v. Sunbeam Corp., 99-2181, p. 16 (La. 2/29/000, 755 So.2d 226, 236.) Additionally, in Quinn, 03-0903, p. *169 6, 869 So.2d at 927, we stated that summary judgment based on subjective facts like | r,intent, motive, malice, knowledge or good faith is rarely appropriate. See also Robertson v. Frank's Super Value Foods Inc., 08-592 (La.App. 5 Cir. 1/13/09), 7 So.3d 669. Thus, the fact that courts are reluctant to grant summary judgment based solely on subjective facts further underscores why this Court should not deviate from jurisprudence that cautions against the acceptance of uncorroborated testimony.
Moreover, I find the majority’s analysis assumes as fact the very question it seeks to answer. That is to say, whether Daisy Dukes intentionally destroyed the evidence to prevent Mrs. Tomlinson’s use of it at trial is a question for the trier of fact, not to be determined by the trial court or this Court based on its own credibility determinations and weighing of the evidence. The only question before this Court is whether Mrs. Tomlinson has offered sufficient evidence from which jurors may reasonably disagree as to Daisy Dukes’ intent in failing to preserve the surveillance footage. Therefore, we are charged with determining whether Mrs. Tomlinson' has shown that genuine issues of material fact exist precluding summary judgment.
I find a dispute of material facts exists regarding whether Daisy Dukes intentionally destroyed the restaurant surveillance footage to deprive Mrs. Tomlinson’s use at trial. In a case where little direct evidence exists, an issue Mrs. Tomlinson claims Daisy Dukes is responsible for, the circumstantial evidence presented when considered as a whole is sufficient to preclude summary judgment. Conversely, Daisy Dukes contends that Mr. Richardson’s deposition testimony is direct evidence which establishes as undisputed fact that the footage was destroyed in the normal course of business.
The root of Daisy Dukes’ argument is the absence of direct evidence. It suggests that because there is no direct evidence that it intentionally destroyed the surveillance footage, then the opposite must be true. However, Daisy Dukes fails to 17cite from any authority the proposition that its unsubstantiated direct testimony trumps the circumstantial evidence upon which Mrs. Tomlinson relies. Aside from finding the acceptance of self-serving and uncorroborated testimony inappropriate on summary judgment, Daisy Dukes’ suggestion misplaces the burden. Mrs. Tomlin-son carries the burden of proof, and it is settled law that a plaintiff may overcome a summary judgment motion by a preponderance of direct or circumstantial evidence. Therefore, I disagree with the majority’s finding that the record presents a dearth of .factual support for Mrs. Tomlin-son’s spoliation claim.
Additionally, I find the majority’s decision stops short in its application of this Court’s own jurisprudence recognizing intentional spoliation claims. Reynolds does not set forth a bright line rule for consideration of an action for intentional spoliation. Consequently, I find the framework set forth in Quinn still applicable.
Quinn established that knowledge of a potential claim goes to the heart of determining whether a spoliator intentionally destroyed evidence to prevent its later use in litigation. In Quinn, we stated that “[t]he theory of ‘spoliation of evidence’ refers to an intentional destruction of evidence for the purpose of depriving opposing parties of its use.” Id., 03-0903, p. 5, 869 So.2d at 926-27 (citing Pham v. Contico Intern., Inc., 99-945, p. 4 (La.App. 5 Cir. 3/22/00), 759 So.2d 880, 882) (emphasis added). We found that allegations of negligent spoliation of evidence were insufficient and that the claimant must allege the destruction was intentional. Id., 03-0903, *170 p. 5, 869 So.2d at 927. Setting forth the test this Court should apply, we concluded “[w]here suit has not been filed and there is no evidence that a party knew suit would be filed when , the evidence was discarded, the theory of spoliation of evidence does not apply.” Id., (citing Smith v. Jitney Jungle of Am., 35,100, p. 11 (La.App. 2 Cir. 12/5/01), 802 So.2d 988, 995 (writ denied 02-0039 (La.3/15/02), 811 So.2d 913)) (emphasis added).
| «Evidence that Daisy Dukes had knowledge of a potential claim is a material issue in the ultimate determination of intent. -In this case, I'find Mrs, Tomlinson 'has-offered sufficient evidence from which a jury may reasonably infer that Daisy Dukes had knowledge of a potential claim against it. After falling in the restaurant, Mrs. Tomlinson requested an accident report form to fill out and asked to speak with the manager. When she was told he was unavailable and.that Daisy Dukes did not have accident report forms, Mrs. Tomlin-son was given, the manager’s business card. She also left her contact information requesting that the manager contact her. Similarly, Mrs, Tomlinson’s supervisor called M^. Richardson on two separate oc-' casions in regards to the incident. _ When asked why he did not review the surveillance footage of Mrs. Tomlinson’s fall, Mr. Richardson stated that he “didn’t think it was ! something that [he] should have looked at at tHe time.”[1] Nevertheless, on the day of the accident Mr. Richardson deemed ‘it necessary to contact' Daisy Dukes’ insurance provider, Landmark.
When Mrs. Tomlinson finally spoke with Mr. Richardson, he informed her that the best he could do was take down her contact information. He later informed her that Landmark would be sending her paperwork. Three days after the • accident, Landmark contacted Mrs. Tomlinson and advised her to seek medical attention. Despite the surrounding facts and circumstances, Daisy Dukes claims that because Mrs. Tomlinson did not file suit until almost a -year after the accident it could not have anticipated a lawsuit, prompting it to preserve the video surveillance footage. Further, it is unclear from Mr. Richardson’s testimony if he ever indicated whether he knew or anticipated the filing of a lawsuit.
In that whether Daisy Dukes had notice of a potential claim is a question of fact that may be reasonably inferred from the totality of the. circumstances, the 19issue should be left to the trier of fact. .Therefore, I find there are genuine issues of material fact remain as to whether Daisy Dukes knew Mrs. Tomlinson would file a potential claim against it when the footage was destroyed. Moreover, given the issue of knowledge is at the root of intent in this case and both are questions to be determined by the fact finder, whether Daisy Dukes intentionally erased the footage to prevent Mrs. Tomlinson from using it to prove her case at trial precludes summary judgment on the spoliation issue.
Based on the circumstantial evidence presented, reasonable minds may disagree as to Daisy Dukes’ knowledge of a possible lawsuit and their motive and intent in failing to preserve the surveillance footage, Therefore, I find the surrounding facts and circumstances establish genuine issues of material fact which make summary judgment inappropriate. In addition to reversing the trial court’s finding on the issue of liability, I would also reverse the trial court’s granting of Daisy Dukes’ motion for summary judgment that dismissed *171 Mrs. Tomlinson’s spoliation claim. Accordingly, on procedural and' substantive grounds, I respectfully concur in part and dissent in part.
LOVE, J., concurs in part and dissents in part.

. Other circuits have found that this type of justification for the lack of action is not a sufficient defense for a business with some level of sophistication, See Robertson v. Frank's Super Value Foods, Inc., 08-592 (La. App. 5 Cir. 1/13/09), 7 So.3d 669.